**STATE of Indiana, ex rel., Stephen R. CARTER, Attorney General of Indiana, Appellant–Plaintiff,**

v.

**PHILIP MORRIS TOBACCO COMPANY, et al., Appellees–Defendants.**

No. 49A02–0706–CV–494.

Court of Appeals of Indiana.

Feb. 1, 2008.

Rehearing Denied March 26, 2008.

Stephen R. Carter, Attorney General of Indiana, David L. Steiner, Lawrence J. Carcare II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David O. Tittle, Kandi K. Hidde, Karl L. Mulvaney, Bingham McHale LLP, Thomas J. Costakis, Greg A. Small, Krieg Devault LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff–Appellant State of Indiana appeals the trial court's order compelling it to participate in arbitration with the Defendants–Appellees Philip Morris Tobacco Company USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company.

We affirm.

The State presents two issues for our review, which we restate as:

I. Whether the trial court erred by ordering the State to participate in arbitration pursuant to the Master Settlement Agreement.

II. To the extent that the trial court ordered arbitration by a single, national arbitration panel, whether the trial court erred in so ordering.

This litigation commenced in 1997. In 1998, a Master Settlement Agreement (MSA) was executed by certain tobacco companies, known as Original Participating Manufacturers (OPMs)[1], and certain states, including Indiana (collectively "Settling States"), in order that the states could recover health care costs for smoking-related illnesses experienced by their citizens. Other tobacco companies, known as Subsequent Participating Manufacturers (SPMs), became parties to the MSA, as well. Pursuant to the MSA, the OPMs and SPMs (collectively "PMs") are required to make substantial annual payments based upon certain data and calculations set forth in the MSA. According to the MSA, these annual payments are subject to certain adjustments, reductions and offsets. Also set forth in the MSA is the requirement that an Independent Auditor calculate the amount of all payments owed under the MSA, determine the amount of any applicable adjustments or reductions, and allocate such payments or adjustments.

For the year 2003, the PMs dispute the final calculations of the Independent Auditor, specifically with regard to the Independent Auditor's determination not to apply a particular adjustment for that year. The Settling States agree with the Independent Auditor as to the final calculations for 2003. Maintaining their position, the PMs moved the trial court to compel arbitration of the matter. Following a hearing, the trial court ordered the matter to arbitration. The State filed a motion to correct error, which the trial court denied. The State now appeals.

The State contends that the trial court erred by ordering it to participate in arbitration. We first note that this Court

---

1. The OPMs are Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company.

applies a *de novo* standard of review to a trial court's determination regarding a motion to compel arbitration. *HemoCleanse, Inc. v. Philadelphia Indemnity Ins. Co.*, 831 N.E.2d 259, 262 (Ind.Ct.App.2005), *reh'g denied, trans. denied*, 855 N.E.2d 1009. Further, we apply ordinary contract principles to determine whether the parties have agreed to arbitrate a dispute. *Bielfeldt v. Nims*, 805 N.E.2d 415, 418 (Ind.Ct.App.2004), *reh'g denied, trans. denied*. In interpreting a contract, we give the language of the contract its plain and ordinary meaning. *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203, 213 (Ind.Ct.App.2007), *reh'g denied*. When construing arbitration agreements, every doubt is to be resolved in favor of arbitration. *Sanford v. Castleton Health Care Center, LLC*, 813 N.E.2d 411, 416 (Ind.Ct.App.2004), *trans. denied*. Parties are bound to arbitrate all matters that are not explicitly excluded and that reasonably fit within the language used. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 285 (Ind.Ct.App.2004). However, arbitration agreements are not to be extended by construction or implication; therefore, parties are bound to arbitrate only those issues that by clear language they have agreed to arbitrate. *Id.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* The trial court's conclusions with regard to the construction of the terms of a written arbitration contract are also reviewed de novo by this Court. *Sanford*, 813 N.E.2d at 416–17.

The present dispute concerns the Independent Auditor's refusal to apply a particular adjustment to the PMs' payments for 2003. Pursuant to the terms of the MSA, each PM makes an annual payment as determined by the calculations of the Independent Auditor. The Independent Auditor calculates and determines the amount of all payments owed pursuant to the MSA, as well as any adjustments, reductions and offsets thereto and performs all calculations in connection therewith. In order to determine the annual payments of the PMs, the Independent Auditor begins with a base payment amount and then applies any applicable adjustments, reductions and/or offsets. One of the adjustments the Independent Auditor must consider each year is the Non–Participating Manufacturers Adjustment ("NPM Adjustment"). Non–Participating Manufacturers (NPMs) are those cigarette manufacturers that have not joined the MSA and, therefore, are not subject to its restrictions. The NPM Adjustment potentially reduces the annual payment of the PMs in compensation for their market share loss to NPMs. The Independent Auditor did not apply the NPM Adjustment to the payment of the PMs for the year 2003. The State defends the decision of the Independent Auditor and maintains that the NPM Adjustment does not apply. It is this refusal of the Independent Auditor to apply the NPM Adjustment for which the PMs requested arbitration pursuant to the arbitration clause of the MSA. Sub-section XI (c) of the MSA sets forth the arbitration clause as follows:

(c) *Resolution of Disputes.* Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so se-

lected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act. MSA, Appellees' Appendix at 78.

The State avers that this dispute is not subject to arbitration. Specifically, the State maintains that the NPM Adjustment was properly denied for 2003 because the State had in effect and diligently enforced a Qualifying Statute, and, the State posits, the diligent enforcement of a Qualifying Statute is not an arbitrable issue pursuant to the MSA. A Qualifying Statute is a statute or regulation of a Settling State that effectively and fully neutralizes the cost disadvantages that the PMs experience vis-à-vis NPMs in the particular Settling State as a result of the provisions of the MSA.[2] The relevance of a State's diligent enforcement of a Qualifying Statute to the NPM Adjustment for any particular year is explained in the MSA, which provides, generally, that a Settling State's annual payment from the PMs is not subject to an NPM Adjustment (i.e., a reduction) if the Settling State continuously had a Qualifying Statute in full force and effect during the calendar year immediately preceding the year in which the payment is due, and *diligently enforced* the provisions of such statute during that calendar year. *See* Sub-section IX (d)(2)(B) of MSA, Appellees' App. at 58–59. The State of Indiana enacted a Qualifying Statute in 1999, which is codified at Ind.Code § 24–3–3. The State claims that arbitration is not applicable to the issue of its enforcement of its Qualifying Statute because the determination regarding diligent enforcement does not "arise out of calculations performed by or determinations made by" the Independent Auditor as required by the arbitration clause of the MSA.

First, the NPM Adjustment is clearly an arbitrable issue under the MSA. The NPM Adjustment is, simply, an adjustment. The MSA directs that the Independent Auditor shall calculate and determine the amount and allocation of all adjustments to be applied to the annual payments of the PMs. *See* Sub-section XI (a)(1) of MSA, Appellees' App. at 77. Therefore, the NPM Adjustment is a calculation performed by and/or a determination made by the Independent Auditor. Accordingly, the dispute between the parties regarding the Independent Auditor's refusal to apply the NPM Adjustment for the PMs' 2003 annual payments is a controversy arising out of a calculation performed by or a determination made by the Independent Auditor, as required by the arbitration clause of the MSA.

Furthermore, contrary to the State's argument, the determination of the diligent enforcement of a Qualifying Statute is part and parcel of the determination of the application of the NPM Adjustment made by the Independent Auditor. Sub-section IX (d)(2) provides:

> (d) *Non–Participating Manufacturer Adjustment*
>
>> (1) *Calculation of NPM Adjustment for Original Participating Manufacturers.*
>>
>> * * * * * * *
>>
>> (2) *Allocation among Settling States of NPM Adjustment for Original Participating Manufacturers.*
>
> (A) The NPM Adjustment set forth in subsection (d)(1) shall apply to the Allocated Payments of all Settling States, except as set forth below.
>
> (B) A Settling State's Allocated Payment shall not be subject to an NPM

---

**2.** Exhibit T to the MSA sets forth a model statute that, if enacted by a Settling State without modification or addition and not in conjunction with any other legislative or regulatory proposal, constitutes a Qualifying Statute. *See* Sub-section IX (d)(2)(E) of MSA, Appellees' App. at 60.

Adjustment: (i) if such Settling State continuously had a Qualifying Statute (as defined in subsection (2)(E) below) in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year; or (ii) if such Settling State enacted the Model Statute (as defined in subsection (2)(E) below) for the first time during the calendar year immediately preceding the year in which the payment in question is due, continuously had the Model Statute in full force and effect during the last six months of such calendar year, and diligently enforced the provisions of such statute during the period in which it was in full force and effect.

MSA, Appellees' App. at 55, 58–59. Review of the MSA by this Court reveals that the Qualifying Statute is mentioned only within this sub-section of the MSA that directs the calculation and application of the NPM Adjustment. The determination of whether a state has enacted and diligently enforced a Qualifying Statute is inextricably related to the determination of the NPM Adjustment for any given year, and both determinations, pursuant to the language of the MSA, are made by the Independent Auditor.

Moreover, the parenthetical of the arbitration clause which states that any disputes arising out of or relating to calculations performed by or determinations made by the Independent Auditor "including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)" shall be submitted to arbitration. Sub-section XI (c) of MSA, Appellees' App. at 78. Sub-section IX (j) of the MSA as referred to in the parenthetical sets forth the order in which allocations, offsets, reductions and adjustments are to be applied to payments made by OPMs and SPMs. *See* Sub-section IX (j) of MSA, Appellees' App. at 71. The allocations, offsets, reductions and adjustments are outlined in ordinal numbered clauses. Clause "Sixth" explains the application of the NPM adjustment to payments made by OPMs and SPMs. *See* Clause "Sixth," Sub-section IX (j) of MSA, Appellees' App. at 72. The parenthetical calls for arbitration, *without limitation,* to any adjustments described in the particular sub-sections. Specifically included within those sub-sections is the NPM Adjustment. Thus, this parenthetical language merely reinforces the fact that the arbitration clause compels arbitration of the determination of the NPM Adjustment as well as of the determination of the diligent enforcement of the Qualifying Statute, which is inextricably linked to the determination of the NPM Adjustment. Thus, contrary to the State's belief, the Independent Auditor is charged with making the determination of the State's diligent enforcement of its Qualifying Statute because it is a part of the NPM Adjustment determination with which the Independent Auditor is charged.

Additionally, the State claims that the determination of diligent enforcement of its Qualifying Statute is not an issue that can be arbitrated but rather is an issue that can be the subject of an action only in the trial court that retained jurisdiction over the MSA. *See* Section VII of MSA, Appellees' App. at 47. In support of this argument, the State cites to Sub-section VII(a) of the MSA, which states as follows:

(a) *Jurisdiction.* Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) * * * * *; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) except as provided in

subsections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State. Provided, however, that notwithstanding the foregoing, the Escrow Court (as defined in the Escrow Agreement) shall have exclusive jurisdiction, as provided in section 15 of the Escrow Agreement, over any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, the Escrow Agreement.

Sub-section VII(a) of MSA, Appellees' App. at 47. Specifically, the State bases its argument on Sub-section VII(a)(2). Sub-section VII(a)(2), if read in a vacuum, does seem to indicate that the issues at hand should be addressed in the trial court retaining jurisdiction over the MSA for the State of Indiana. However, we do not read terms of a contract or settlement agreement in a vacuum. Rather, we must read a contract as a whole, and we determine the meaning of a contract from an examination of all of its provisions, without giving special emphasis to any word, phrase or paragraph. *Hepburn v. Tri-County Bank,* 842 N.E.2d 378, 384 (Ind.Ct. App.2006), *reh'g denied, trans. denied,* 860 N.E.2d 592. When Sub-section (a) is read as a whole, it is apparent that the State's argument is untenable.

Sub-section VII(a)(3) lists exceptions to the rule that the trial court retains exclusive jurisdiction over matters of the MSA as set out in Sub-section (a)(2). Subsection (a)(3) first identifies the provisions of Sub-section IX (d) as an exception to the rule. As we have discussed previously in

this opinion, Sub-section IX (d) sets forth the calculation, determination and allocation of the NPM Adjustment. Within Sub-section IX (d) is also the only mention and explanation in the MSA of the Qualifying Statute and its diligent enforcement. In addition, Sub-section (a)(3) identifies Sub-section XI (c) as an exception to the rule of the trial court's jurisdiction. As previously discussed, Subsection XI (c) is the arbitration clause, to which we have already determined this dispute is subject because it arises out of a determination by the Independent Auditor. Subsection VII(a) merely reinforces our previous analysis. Therefore, the MSA requires arbitration of this dispute both because it is a dispute "arising out of or relating to" the Independent Auditor's calculation and determination of the PMs' payments and because it is a dispute "concerning the operation or application of an adjustment described in subsection IX (j)." *See* Sub-section XI (c) of MSA, Appellees' App. at 78.

Moreover, in its brief, the State makes the statement that the Independent Auditor "did not and could not make a decision" as to whether the State diligently enforced its Qualifying Statute. Appellant's Brief at 21.

The Independent Auditor denied the NPM Adjustment for 2003 based upon a presumption of diligent enforcement.[3] The decision of the Independent Auditor to employ this presumption constitutes a determination. Indeed, the only remaining means by which the Independent Auditor could have denied the NPM Adjustment for the year 2003 was by affirmatively finding that there was diligent enforce-

---

**3.** In a letter from the Independent Auditor dated March 5, 2004 giving notice of the Independent Auditor's preliminary calculations for payments regarding the year 2003, the Independent Auditor stated, "NAAG [National Association of Attorneys General] has responded to the 1/16/04 Information Request

(Notice ID: 00128) stating that all Settling States have enacted Model Statutes and represent to have been in full force and effect continuously since the indicated effective date; therefore, no possible NPM adjustment is allocated to PMs." Appellees' App. at 424.

ment by the State. The other means by which the NPM Adjustment may be applied or denied is through the "Market Share Loss." For any year in which there was a Market Share Loss by the PMs, a nationally recognized firm of economic consultants is to determine whether the disadvantages experienced as a result of the provisions of the MSA were a significant factor contributing to the Market Share Loss for the year in question. If the economic consultants determine that the disadvantages experienced as a result of the provisions of the MSA were a significant factor contributing to the Market Share Loss for the year in question, the NPM Adjustment shall apply. Conversely, if the economic consultants determine that the disadvantages experienced as a result of the provisions of the MSA were not a significant factor contributing to the Market Share Loss for the year in question, the NPM Adjustment shall not apply. *See* Sub-section IX (d)(1)(C) of MSA, Appellees' App. at 56–57. There was a Market Share Loss in 2003. Further, the economic consultants had determined that the disadvantages experienced by the PMs as a result of the MSA were a significant factor contributing to the PMs' Market Share Loss in 2003 such that the NPM Adjustment would apply. This leaves the diligent enforcement determination as the only basis upon which the NPM Adjustment could have been denied for that year, and it matters not whether it was made explicitly or by presumption.

In a related argument, the State asserts that the Independent Auditor did not have the authority to determine the diligent enforcement of the State's Qualifying Statute. Having previously determined in this opinion that the MSA charges the Independent Auditor with the determination of the diligent enforcement of the Qualifying Statute, we need not restate our analysis here.

Thus, the Independent Auditor decided not to apply the NPM Adjustment based upon the presumption that the State diligently enforced its Qualifying Statute. This decision was a "determination" by the Independent Auditor. Further, in order for the Independent Auditor to calculate the PMs' payment obligations, a decision has to be made regarding application of the NPM Adjustment, of which, the diligent enforcement of a Qualifying Statute is an inextricably related part.

 Finally, the State maintains that, to the extent the trial court ordered arbitration by a single, national panel, the court erred by doing so. In support of this argument, the State cites to the language contained in the arbitration clause mandating that arbitrable disputes be submitted to a panel of three neutral arbitrators. The text calls for each of the two sides to the dispute to select one arbitrator, and the two so-selected arbitrators to select the third arbitrator. *See* Sub-section XI (c) of MSA, Appellees' App. at 78. The State contends that the two "sides" referred to in this sub-section of the MSA are the PMs and a single state. The State further argues that, with regard to the question of each Settling State's diligent enforcement of its Qualifying Statute, the Settling States are in conflict and therefore would not all be on the same "side" for arbitration of this issue. It poses this assertion based upon Sub-section IX (d)(2)(C) of the MSA, which reallocates to the remaining Settling States the NPM Adjustment of the Settling States that are not subject to the NPM Adjustment due to the diligent enforcement of their Qualifying Statute. *See* Sub-section IX (d)(2)(B) of MSA, *supra* (stating that a Settling State's payment from PMs is not subject to NPM Adjustment if Settling State continuously had Qualifying Statute in full force and effect during preceding year and

diligently enforced provisions of such statute). This reallocation of the NPM Adjustment causes the remaining Settling States' payments to be further reduced accordingly.

Both the language and the structure of the MSA require that the dispute concerning the 2003 NPM Adjustment, including the Settling States' claims of diligent enforcement of their Qualifying Statutes, must be submitted to a single, national arbitration panel. The language of the MSA requires a single arbitration panel with nationwide authority. The arbitration provision expressly provides that "[e]ach of the two sides to the dispute shall select one arbitrator." Sub-section XI (c) of MSA, Appellees' App. at 78. Neither does this sub-section provide that each Settling State or each PM select its own arbitrator, nor does it provide that each Settling State or each PM will have its own arbitration panel. Rather, this sub-section of the MSA refers to the two sides to this agreement settling their disputes by choosing one arbitrator for each side. Those two sides are: (1) the PMs (which contend that they are entitled to an NPM Adjustment) and (2) the Settling States (which contend that no NPM Adjustment can be applied). If the parties had meant for each Settling State to have its own arbitrator or arbitration panel, this sub-section of the MSA would not have specified a panel of only three arbitrators, which clearly indicates a national arbitration. The language used evinces the parties' intention to have a single, national arbitration. Moreover, the number of arbitrations and resulting decisions would make reaching a final, national settlement of a single dispute extremely cumbersome.

Furthermore, the MSA is an agreement of nationwide concern, concern not only that the Settling States recover funds expended on behalf of their citizens due to smoking-related illnesses but also concern for the prevention of youth access to tobacco products in the Settling States. Accordingly, the MSA is an agreement with national effect and structure. Specifically, payments by the PMs are national payments, and the NPM Adjustment is a national adjustment.

Pursuant to Sub-sections IX (a), (b) and (c), each PM makes a single, annual payment into the escrow account set up just for this purpose. See Section IX of MSA, Appellees' App. at 52–54. More relevant to the issue at hand is the nationwide NPM Adjustment. Although the NPM Adjustment is applied to each Settling State's payment, it is applied across the board to all payments nationally. The exception to this is if a Settling State has diligently enforced its Qualifying Statute. In this situation, the payment for that Settling State would not be reduced by the NPM Adjustment. Instead, that Settling State's share of the NPM Adjustment is allocated to the other Settling States, thereby further reducing their payments. See Sub-section IX (d)(2)(C) of MSA, Appellees' App. at 59. In this way, the NPM Adjustment and its inextricably linked defense of diligent enforcement have nationwide repercussions. Particularly, the application of the diligent enforcement defense for any Settling State affects all other Settling States, thus creating the need for a single decision-maker, and making it all the more important to resolve these disputes under a single set of rules that apply equally to each Settling State. The language as well as the structure of the MSA requires disputes such as this to be determined by a single, national arbitration panel.

Based upon the foregoing discussion and authorities, we conclude that the trial court correctly ordered the State to participate in arbitration pursuant to the Master Settlement Agreement, and, to the extent

that the trial court ordered arbitration by a single, national arbitration panel, it was correct in doing so.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.