**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 09 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**R. JOHN WRAY**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS FAHLSING, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 57A05-1211-CC-584 |
| | ) | |
| SHANNON FAHLSING and ANGELA TAYLOR, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE NOBLE CIRCUIT COURT
The Honorable G. David Laur, Judge
Cause No. 57C01-1106-CC-25

**April 9, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Dennis Fahlsing (Father), appeals the trial court's denial of his motion for summary judgment in favor of Shannon Fahlsing (Shannon) and Angela Taylor (Angela) (collectively, the Daughters) and its order staying the action and compelling arbitration.

We affirm.

## ISSUES

Father raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by denying Father's motion for summary judgment on his claims of unjust enrichment; and

(2) Whether the trial court erred by ordering the parties to arbitration.

## FACTS AND PROCEDURAL HISTORY

This is a family limited partnership dispute. Landmark Legacy LP (Landmark) is an Indiana limited partnership. On February 8, 2005, Father executed a limited partnership agreement (Agreement) for Landmark. The cover page of the Agreement listed Landmark's name, Father's name, and the words "living trust." (Appellant's App. p. 105). The Agreement recited that Father made a capital contribution of $993,392.76 to Landmark and received one general partnership unit and 99 limited partner units in exchange. The capital contribution represented a 73% interest in Stroh Landmark, LP (Stroh) that Father received from Hugh G. Stroh (Hugh). Hugh filed a gift tax return for

2

the transfer of Stroh interests to Father. On February 9, 2005, a Certificate of Indiana Limited Partnership was filed on behalf of Landmark with the Indiana secretary of state.

On February 16, 2005, Father assigned and transferred 44 of his 99 Landmark limited partnership units to each of the Daughters. The transfer was memorialized in two documents bearing only Father's signature and entitled "Assignment of Partnership Interest." (Appellant's App. pp. 49, 53). These provided that each Daughter received their respective limited partnership units "in exchange for the loan this date from [Father] to her in the sum of [$437,092.81] together with interest at the rate of eight percent (8%) per annum." (Appellant's App. p. 49, 53). However, no date of expected repayment was stated. The Daughters also received the right to Landmark's profits, losses, and distributions that Father, as a limited partner, would have received. Father, as Landmark's general partner, also executed two certificates of ownership attesting to the transfer of 88 limited partnership units to the Daughters. As a result of the transfers, Father had 1 general partner unit and 11 limited partner units, while the Daughters each had 44 limited partner units. Father did not file a gift tax return for the transfers of the partnership units to the Daughters "because the assignment was in exchange for a loan by [him] to [the Daughters]." (Appellant's App. pp. 30-31).

In April 2009, the Daughters' mother (Mother) filed for dissolution of her marriage to Father. On July 12, 2010, Father was deposed. He stated that Hugh was a close family friend who intended for the Daughters to receive part of the Stroh interests given to Father. Father had also transferred his remaining 11 limited partnership units to

3

another person at Hugh's direction. Angela had received distributions from Landmark, but Father did not know how many or how much. Father did not know whether he ever spoke to the Daughters about Landmark or how much money they should expect for it.

On June 29, 2011, Father filed his complaint alleging that as of July 1, 2011, the Daughters each owed Father $659,830.33, the value of the purported loans plus accrued interest. Father alleged that Landmark had increased in value based on its acquisition of additional properties and interests of Hugh and Stroh. Since receiving their limited partnership units, the Daughters had "failed and refused to pay [Father]." (Appellant's App. p. 8). Father also alleged that both Daughters had "been unjustly enriched as a result of their unpaid interest to [Father] for the assigned interest of [Father] to them in Landmark." (Appellant's App. p. 8).

On August 15, 2011, the Daughters filed their answer denying all of the allegations except Landmark's formation, asserting affirmative defenses, and seeking attorney fees for a frivolous claim. Specifically, the Daughters denied 1) that they were unjustly enriched, 2) any knowledge of the Agreement, 3) Father's transfers of limited partnership units to them, and 4) the creation of loans in exchange for the limited partnership interests. As affirmative defenses to the complaint, the Daughters asserted that Father failed to attach necessary documents and estoppel. In particular, the Daughters alleged that Father's claim was "barred in that [Father], under oath in another cause of action with this [c]ourt, testified that no such loan existed by that the interest of

4

[the Daughters] in [Landmark was] established as a plan of estate planning and gift by [Father] in conjunction with [Hugh]." (Appellant's App. p. 21).

On November 9, 2011, Father filed his motion for summary judgment asserting no genuine issues of material fact and his entitlement to judgment as a matter of law based on the Daughters' lack of capital contribution to Landmark, their acceptance of the transferred units, and their failure to make any loan repayments to Father. Father designated his affidavit, the Agreement, and limited partnership unit transfer documentation in support. In his affidavit, Father stated that the Daughters had "both filed claims seeking to terminate and entirely liquidate Landmark with each of them claiming a respective [44%] of the liquidated cash without either of them paying [Father] for their original assigned ownership interest." (Appellant's App. p. 32). Father argued that the circumstances entitled him to judgment under the theory of either unjust enrichment or promissory estoppel, which Father contended "permit recovery where no express written contract in fact exists." (Appellant's App. p. 58). Father asserted that he had a reasonable expectation of payment from the Daughters, that the limited partnership interests had appreciated in value, and that the Daughters "consistently represented themselves as 44% owners of Landmark." (Appellant's App. p. 57). Given the Daughters' refusal to repay the loans and to decline the benefits of Landmark ownership, Father contended that the Daughters had been unjustly enriched.

On December 6, 2011, the Daughters filed their response to Father's motion for summary judgment, disputing the existence of the loans and their receipt of "any

5

distributions of profit or any amounts from [Father] in exchange for the interest[s] assigned to them in [Landmark]" as genuine issues of material fact. (Appellant's App. p. 66). The Daughters designated their affidavits, the Agreement, documentation recording the transfer of limited partnership units to them, and portions of Father's deposition testimony in his dissolution action. Further, the Daughters also designated Father's revocable living trust deed and documentation recording the transfer of Father's "partnership interest in [Landmark]" to his living trust for no consideration. (Appellant's App. p. 150). Although conceding that Father had informed them of their limited partnership interest in Landmark and that the limited partnership property was indirectly provided by Hugh, the Daughters asserted that they never knew of nor had Father ever mentioned the purported loans in exchange for their limited partnership interests. The Daughters also pointed to the dissolution action, in which Father and Mother "vigorously contested" Landmark's affairs along with the marital property. (Appellant's App. p. 62). Had the loans existed, the Daughters argued that they would have been part of the marital estate and required disclosure to Mother. However, Father did not reveal the existence of the loans at any time throughout the dissolution action and even up to the filing of his complaint. On January 4, 2011, the trial court issued its order denying Father's motion for summary judgment and appointed a mediator.

On August 30, 2012, Daughters filed a demand for arbitration with the American Arbitration Association regarding their fiduciary duty claims against Father. On September 20, 2012, the Daughters filed a motion to dismiss or in the alternative to stay

the action pending arbitration with the trial court citing Section 10.15 of the Agreement as the basis for seeking arbitration. On September 20, 2012, Father opposed the motion to dismiss, arguing that the dispute over the transfer of partnership units was outside the scope of Section 10.15 and that the Daughters had waived any right to arbitration. On November 13, 2012, the trial court ordered the litigation stayed and the parties to arbitrate their dispute.

Father now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

I. *Summary Judgment*

Father first contends that the trial court erred in denying his motion for summary judgment in favor of the Daughters. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). An issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed facts support conflicting reasonable inferences. *Id.*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly

7

applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608.

We note that the Daughters did not file a brief. When an appellee does not submit a brief, an appellant may prevail by making a *prima facie* case of error. *Village of College Corner v. Town of West College Corner*, 766 N.E.2d 742, 745 (Ind. Ct. App. 2002). *Prima facie* in this context is defined as "at first sight, on first appearance, or on the face of it." *Id*. Such a rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee. *Id*.

Father asserts that there was no issue of genuine fact and, as a matter of law, the Daughters have been unjustly enriched by their receipt of Landmark limited partnership units. He argues that the undisputed facts show that the Daughters have not paid for such limited partnership units nor made any capital contribution to Landmark. Father contends that the transfer documentation reflects that he reasonably expected payment for the units based on his purported loans to the Daughters to acquire them. Pointing to his affidavit and deposition testimony, Father argues there is no evidence that he intended the units to be gifts for the Daughters.

To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Inlow v. Inlow*, 797 N.E.2d 810, 816 (Ind. Ct. App. 2003), *trans. denied*. Principles of equity prohibit

unjust enrichment in cases where a party accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. *Id*. Thus, a party seeking to recover under this theory must demonstrate that the benefit was rendered to another at the express or implied request of such other party, and allowing the other party to retain the benefit without paying for it would be unjust, and that he expected payment for his services. *See Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005), *trans. denied*. However, a benefit gratuitously conferred upon the other party is not unjust enrichment. *See Coleman v. Coleman*, 949 N.E.2d 860, 867 (Ind. Ct. App. 2011).

We conclude that genuine issues of fact exist and therefore affirm the trial court. First, the Daughters designated facts that they had no knowledge of the purported loans. Contrary to Father's affidavit, they denied that Father had ever loaned them any property or funds. The Daughters stated that Father had given them a copy of "the entire partnership records and documents from Landmark." (Appellant's App. p. 87). However, the transfer documentation for the Daughters' limited partnership units was not included. Consequently, Father's claim that the Daughters did not decline ownership is not dispositive in light of their disavowal of the loans.

Second, the Daughters relied on their affidavits and Father's deposition testimony to establish that the transfers were gifts and Father brought this action in retribution. Father testified that the capital contribution itself was a gift to him from Hugh, who also wanted the Daughters to be recipients. Although Father claimed there had been distributions from Landmark to Angela, he could not recall how many or when such

9

distributions occurred. Father testified that Angela "owes" Landmark "a house" that she was "supposed to put […] back in the partnership." (Appellant's App. p. 166). In their affidavits, each Daughter stated that after they had filed for an accounting of Landmark, Father said that he would "destroy my life and my sister's life[,"] and thereafter immediately filed the case at bar. (Appellant's App. pp. 70, 88). In sum, we conclude that genuine issues of material fact exist on Father's claim of unjust enrichment and therefore affirm the trial court's denial of summary judgment in favor of the Daughters.

## II. *Arbitration*

### A. *Standard of Review*

Father next challenges the trial court's order compelling the parties to arbitrate. We apply a *de novo* standard of review to a trial court's determination regarding a motion to compel arbitration. *State ex rel. Carter v. Philip Morris Tobacco Co.*, 879 N.E.2d 1212, 1214-215 (Ind. Ct. App. 2008), *trans. denied*. The party seeking to compel arbitration must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that is intended to be arbitrated under the agreement. *Medical Realty Associates, LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 874 (Ind. Ct. App. 2010). Whether the parties agreed to arbitrate any disputes is a matter of contract interpretation. *Id*. Thus, we decide whether the dispute, on its face, is covered by the language of the arbitration provision. *Id*. In doing so, we will apply ordinary contract principles governed by state law. *Id*. If we determine that the parties have agreed to arbitrate, Indiana policy favors arbitration. *Id*.

B. *Agreement to Arbitrate*

Father first contends that the transfer of limited partnership units is not subject to arbitration under the Agreement. Section 10.15 of the Agreement governs arbitration and provides as follows:

> Any controversy or claim arising out of or relating to this Agreement shall only be settled by arbitration according to the rules of the American Arbitration Association, by one Arbitrator, and shall be enforceable in any court having competent jurisdiction.

(Appellant's App. p. 135). The clause is broad since it specifies that arbitration must be used to settle any controversy or claim. *See PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 99 (Ind. 1994). When a valid contract contains a broad arbitration clause, resolution of disputes about various other clauses should be through arbitration. *Id.*

Father contends that the transfer of his limited partnership units to the Daughters does not arise out of or relate to the Agreement for the following reasons. First, Father alleges that there was no written agreement with an arbitration provision "in the personal transfer of units on February 16, 2005, from [Father] to [the Daughters]." (Appellant's Br. p. 9). Second, he contends that the Daughters never had direct dealings with Landmark, including the acquisition of their units. Neither reason is persuasive.

The Agreement regulates the transfer of limited partnership units; therefore, claims regarding their transfer are subject to arbitration. Article VI of the Agreement addresses the transfer of Landmark limited partnership units. It contains material restrictions on transfer such as a right of first refusal and prohibitions on transfers in violation of "the Internal Revenue Code of 1986" or "federal or state securities laws."

11

(Appellant's App. p. 126). Further, all certificates of ownership memorializing the transfer of units to the Daughters state "[t]he transfer of these interests is limited by the [Agreement] and any transferee should examine said Agreement to determine said limitation." (Appellant's App. p. 16, 18). This unambiguous language brings any dispute about the transfer of limited partnership units to the Daughters within the scope of the Agreement's arbitration clause. *See Isp.com LLC v. Theising*, 805 N.E.2d 767, 776 (Ind. 2004).

## C. *Waiver*

Father also argues that the Daughters waived their right to arbitrate. Although a written agreement to submit a dispute to arbitration is valid and enforceable, the right to require such arbitration may be waived by the parties. *Tamko Roofing Products, Inc. v. Dilloway*, 865 N.E.2d 1074, 1079 (Ind. Ct. App. 2007). Such a waiver need not be in express terms and may be implied by the acts, omissions or conduct of the parties. *Id.* Whether a party has waived the right to arbitration depends primarily upon whether that party has acted inconsistently with its right to arbitrate. *Id.* Waiver is a question of fact under the circumstances of each case. *Id.* In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum. *Id.*

Father raises four grounds to assert waiver. First, he argues that arbitration is an affirmative defense under Ind. Trial Rule 8(C) and Daughters have therefore waived arbitration by failing to raise it in their responsive pleading. Second, because the Daughters have substantially participated in this litigation, Father accuses them of acting inconsistently with any right to arbitrate. Third, by failing to raise arbitration more than a year past the filing of the complaint, Father argues that the Daughters' motion to compel arbitration is untimely. Finally, Father asserts waiver because the Daughters did not raise his claim as an issue in their American Arbitration Association filing.

We conclude that the Daughters did not waive their right to arbitrate. Although styled as a motion to dismiss or stay pending arbitration, we view Daughters' motion as one to compel arbitration. *See Tamko*, 865 N.E.2d at 1078. Thus, the failure to raise it as an affirmative defense is inapposite. Next, we cannot conclude that the Daughters have fully litigated the issues by filing a responsive pleading and opposing Father's motion for summary judgment. *See Shahan v. Brinegar*, 390 N.E.2d 1036, 1041 (Ind. Ct. App. 1979). Neither does their year delay in requesting arbitration persuade us to find waiver. *See MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910-11 (Ind. 2004). Finally, Father cites no authority for his argument that the Daughters' American Arbitration Association filing forecloses arbitration of his unjust enrichment claim. Though seeking resolution of the Daughters' fiduciary duty claims against Father, once the trial court determines that a dispute is subject to arbitration, all additional concerns, including issues regarding the merits of the underlying claim or

procedural arbitrability, are for the arbitrator. *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 853 n.4 (Ind. Ct. App. 1995), *trans. denied*. Consequently, we find that no waiver of the Daughters' right to arbitrate has occurred and affirm the trial court.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in denying Father's motion for summary judgment. We also conclude that the trial court did not err by ordering the parties to resolve their dispute in arbitration.

Affirmed.

BAKER, J. and BARNES, J. concur