John R. RODDIE and Shannon M. Roddie, Appellants–Plaintiffs,

v.

NORTH AMERICAN MANUFACTURED HOMES, INC., Appellee–Defendant.

No. 32A01–0602–CV–72.

Court of Appeals of Indiana.

Aug. 11, 2006.

Robert C. Price, Price & Runnells, Bloomington, IN, Attorney for Appellants.

William O. Harrington, Scott C. Quick, William O. Harrington, P.C., Danville, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs John R. and Shannon M. Roddie appeal the trial court's grant of appellee-defendant North American Manufactured Homes, Inc.'s (NAMH) motion to dismiss. Specifically, the Roddies argue that the trial court erred in finding that the contract between the parties for the construction of a modular home (Contract) required this dispute to be submitted to arbitration. Finding that the Contract is not unconscionable or illusory and that this dispute falls within the agreement to arbitrate, we affirm the judgment of the trial court.

### FACTS

On April 22, 2003, the Roddies entered into the Contract with NAMH regarding the purchase of a modular home. A modular home is built in subunits offsite without roofing, siding, or utilities, and final construction takes place when the subunits are brought to the site and joined together on a foundation. The constructed house is then roofed, siding is attached, carpeting installed, and utility connections completed.

The Contract contained an arbitration clause, which stated in pertinent part:

> All questions as to the rights and obligations arising under the terms of this Agreement and the Site Development Proposal are subject to arbitration, in accordance with the Indiana Rule of Alternative Dispute Resolution. In the case of a dispute, either party may make a demand for arbitration by filing with the other a written demand. One arbitrator may be agreed upon. Otherwise, three arbitrators shall be used.... Such decision shall be a condition precedent to any right of legal action, and where permitted by law the decision may be filed in any court of competent jurisdiction to carry it into effect. If the arbitrators deem that the case demands it, the arbitrators are authorized to award to the party whose contention is upheld such sums as they deem proper for the items and expenses incident to the arbitration and, if the dispute was without reasonable cause, the arbitrators are authorized to assess damages for delay. The arbitrators shall fix their own compensation, to be deemed reasonable and

any arbitration fees will be assumed by the Purchaser.

Appellant's App. p. 20–21. The Contract further stated, "Prices, specifications, color, design, floor plan and delivery subject to change without notice or obligation. Prices are held firm for sixty (60) days from date of the purchase agreement, unless a[sic] industry wide shortage occurs which is beyond our control. . . ." Appellant's App. p. 24. NAMH constructed a modular home for the Roddies on their land.

On April 5, 2005, the Roddies filed suit against NAMH, seeking rescission of the Contract and damages for breach of the implied warranty of habitability. Among other things, the Roddies alleged that the siding, roofing, and rubber flashing boots were defectively installed, allowing water to penetrate into the cavities of the home, that the septic system had failed, and that the plumbing had leaks that caused a loss of thousands of gallons of water. On June 9, 2005, NAMH filed a motion to dismiss, alleging that the arbitration clause in the Contract precluded the filing of the complaint. On August 22, 2005, the trial court held an evidentiary hearing on the motion. And on October 17, 2005, the trial court partially granted NAMH's motion, finding that the Contract provided for arbitration prior to the commencement of legal action, staying further action in the trial court, and ordering the parties to submit the dispute to arbitration. The Roddies now appeal.

## DISCUSSION AND DECISION

The Roddies contend that the trial court erred in granting NAMH's motion to dismiss. Specifically, they argue that the Contract is unconscionable and illusory and that the Contract does not govern this dispute because it arises under statute.

■ Because NAMH's motion to dismiss was based upon its contention that arbitration was required before litigation, it was, in essence, a motion to compel arbitration. We apply a de novo standard of review to a trial court's ruling on a motion to compel arbitration. *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind.Ct.App. 2004). We further note Indiana's strong policy in favor of enforcing arbitration agreements. *Homes by Pate, Inc. v. De-Haan*, 713 N.E.2d 303, 306 (Ind.Ct.App. 1999).

■ When a party seeks to compel arbitration, it must satisfy a two-pronged burden of proof. First, it must demonstrate the existence of an enforceable agreement to arbitrate the dispute. Second, it must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration. *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind.Ct.App. 2005).

When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. Words used in

a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended.

*Id.* at 1000–01 (quoting *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001)) (internal citations omitted).

■ As a threshold matter, we must address the Roddies' contentions that the Contract, and thereby the arbitration clause, is unenforceable because it is unconscionable and illusory. The Roddies argue that the Contract is unconscionable because they cannot afford the arbitration process and because it is a contract of adhesion. They assert that the Contract is illusory because of a clause in the Contract that they assert "relieves NAMH of any obligation to do anything." Appellants' Br. p. 12.

■ We note that to be unconscionable, a contract "must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.,* 533 N.E.2d 1279, 1286 (Ind.Ct. App.1989). Often there are circumstances that show that there was unequal bargaining power at the time the contract was executed that led the party with lesser power to enter into it unwillingly or without knowledge of its terms. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.,* 412 N.E.2d 129, 131 (Ind.Ct.App.1980). "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

The Roddies introduced evidence of their monthly budget. Their household earnings are $3869.49 per month. The monthly budget also shows that the Roddies have incurred significant debts, approximately a quarter of which are unrelated to the purchase of this house. Plaintiff's Ex. 1. But there is no evidence of the potential cost to the Roddies of arbitration. Indeed, the arbitration agreement even provides that "the arbitrators are authorized to award to the party whose contention is upheld such sums as they deem proper for the items and expenses incident to the arbitration and, if the dispute was without reasonable cause, the arbitrators are authorized to assess damages for delay." Appellants' App. p. 20. So while the Roddies agreed to be responsible for arbitration fees, the Contract also provides for the chance that they will receive more money in damages than they will pay in arbitration fees. As the United States Supreme Court found in *Green Tree,* the risk that the Roddies "would be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement" because there is no evidence of the cost of arbitration to them. 513 U.S. at 91, 115 S.Ct. 537.

■ The Roddies' argument regarding whether this is a contract of adhesion is entirely premised on the contention that "no sensible person not under duress or in distress would sign a contract which had as a pre-condition for its enforcement the payment of money they did not have to three arbitrators they cannot pay." Appellant's Br. p. 11–12. We have already determined that the Contract does not fail for the inclusion of the agreement that the Roddies would pay the costs of arbitration. The Roddies do not argue that their bargaining power was unequal; they simply argue that NAMH was aware of their fi-

nances when the Contract was signed. They also do not allege that they entered into the Contract unwillingly or without knowledge of its terms. In short, they have not demonstrated that this was a contract of adhesion.

The Roddies also claim that the Contract is illusory because NAMH "is not bound to do anything in particular" and therefore fails for lack of mutuality. Appellants' Br. p. 12. There can be no enforceable contract unless both parties are bound. Where one party to an agreement acts upon the promise of the other party and performs his part of the agreement, the contract is not unenforceable for lack of mutuality. *Rogier v. Am. Testing and Eng'g Corp.*, 734 N.E.2d 606, 618 (Ind. Ct.App.2000).

The Roddies' argument is premised on the provision of the Contract that states, "Prices, specifications, color, design, floor plan and delivery subject to change without notice or obligation. Prices are held firm for sixty (60) days from date of the purchase agreement, unless a[sic] industry wide shortage occurs which is beyond our control...." Appellants' App. p. 24. The Contract required NAMH to construct, deliver, and install a modular home, and they did so. The fact that they may or may not have done so in a workmanlike manner does not make the Contract fail for lack of mutuality. Thus, we find that the Contract and arbitration clause are valid and enforceable.

We now turn to the issue of whether the disputed matter is the type of claim that the parties agreed to arbitrate. Any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used. *Polinsky v. Violi*, 803 N.E.2d 684, 687 (Ind.Ct.App.2004).

The arbitration agreement states, "All questions as to the rights and obligations arising under the terms of this Agreement and the Site Development Proposal are subject to arbitration, in accordance with the Indiana Rule of Alternative Dispute Resolution." Appellant's App. p. 20. The first count of the Roddies' complaint alleges that NAMH breached the Contract. The Roddies do not dispute that this falls within the arbitration agreement.

The second count of the complaint alleges a breach of the implied warranty of habitability. The Roddies contend that this count is not arbitrable because the Contract disclaimed all warranties so their claim therefore arises under statute. The provision of the Contract to which the Roddies refer states:

> [NAMH] makes no warranty, express or implied, and specifically, disclaims all warranties, express or implied with regard in the Structure, and components and items associated with or contained in the Structure. Purchaser is directed to the warranties, if any, offered by the manufacturers of the Structure and the components or items installed or located in the Structure.

Appellants' App. p. 21. Our reading of this provision leads to the conclusion that NAMH did not disclaim a warranty with regard to work done by NAMH itself, but instead disclaimed warranties on work done by the manufacturers of the subunits of the house.

NAMH was responsible for construction and completion of the modular home after the subunits were built, providing site improvements, installing foundation and masonry work, and paying bills for materials and labor in connection with the construction of the house. Appellants' App. p. 14–15. NAMH also installed plumbing, installed the septic system, and graded the

land around the house. Appellant's App. p. 8. The quality of the work done on the foundation, grading of the land, plumbing, and septic system form the basis of a majority of the Roddies' complaints about the construction of the house. Appellant's App. p. 8–10. As we have already found, NAMH did not disclaim warranties with regard to this work. Therefore, the Roddies' claim in this regard arises under the terms of the Contract and is subject to arbitration.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.