Connie BRUMLEY, et al., Appellants,

v.

COMMONWEALTH BUSINESS COL-LEGE EDUCATION CORP., d/b/a Brown Mackie College, Appellee.

No. 45A04–1002–CT–66.

Court of Appeals of Indiana.

March 29, 2011.

---

David W. Holub, Law Offices of David W. Holub, P.C., Merrillville, IN, Attorney for Appellants.

Jason L. Kennedy, Jill M. Felkins, Segal McCambridge Singer & Mahoney, Ltd., Chicago, IL, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

This is an interlocutory appeal from an order compelling arbitration. Plaintiff students Connie Brumley, Ronisha Smith, and Stephanie Anderson brought suit against defendant Brown Mackie College. The plaintiffs allege that they were fraudulently induced to enroll at Brown Mackie due to misrepresentations of accreditation. Brown Mackie moved to compel arbitration based on arbitration clauses in the plaintiffs' student enrollment agreements. The trial court sustained Brown Mackie's

motion, and the plaintiffs now appeal. We conclude that, because the plaintiffs' action challenges the enrollment agreements in their entirety rather than the arbitration clauses in particular, the plaintiffs' claims remain subject to arbitration. We affirm.

### Facts and Procedural History[1]

Brown Mackie College offers a postsecondary degree program in surgical technology at its Merrillville location. According to the plaintiffs, Brown Mackie advertised that its program was accredited and that graduates were eligible to sit for a certifying exam administered by the National Board of Surgical Technology and Surgical Assisting. The plaintiffs enrolled in Brown Mackie's surgical technology program relying on the school's representations that it was accredited.

Each of the plaintiffs signed a Brown Mackie "ENROLLMENT AGREEMENT" as well as a supplemental form titled "ARBITRATION." The header of the enrollment agreement read, "Accredited member, Accrediting Council for Independent Colleges and Schools (ACICS)." *See, e.g.,* Appellee's App. p. 57. The agreement specified tuition and fees, stated the school's refund policy, and outlined the student complaint process.

Both the enrollment agreements and arbitration forms contained substantially similar arbitration clauses. Those clauses provided:

> You and Brown Mackie College–MV agree that any dispute or claim between you and BMC (or any company affiliated with BMC, or any of its officers, directors, trustees, employees or agents) arising out of or relating to this enrollment agreement or, absent such agreement, your enrollment or attendance at BMC, whether such dispute arises before, during, or after your attendance

and whether the dispute is based on contract, tort, statute, or otherwise, shall be, at your or BMC['s] election, submitted to and resolved by individual binding arbitration pursuant to the terms described herein.

> \* \* \* \* \* \*

> IF EITHER YOU OR CBC CHOOSES ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL, TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES, OR OTHERWISE LITIGATE THE DISPUTE OR CLAIM IN ANY COURT .... FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU OR AiP WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

> The arbitrator shall have no authority to arbitrate claims on a class action basis, and claims brought by or against you may not be joined or consolidated with claims brought by or against any other person....

> The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.,* shall govern this arbitration provision. This arbitration provision shall survive the termination of your relationship with BMC....

*See, e.g., id.* at 81, 58.

The plaintiffs paid tuition and attended their program courses, but at some point they learned that Brown Mackie lacked accreditation in surgical technology.

---

1. We heard oral argument in this case on March 2, 2011.

The plaintiffs filed suit against Brown Mackie alleging breach of express and implied contract, intentional and negligent misrepresentation, and fraud. The plaintiffs claimed in relevant part that Brown Mackie's representatives "knowingly made false statements to students about accreditation, externships and job placement after graduation, thereby inducing students to enroll in defendant's Surgical Technology program." Appellants' App. p. 184. Without a degree from an accredited program, the plaintiffs alleged they were unable to secure the type of surgical jobs that they were being trained for.

Brown Mackie moved to compel arbitration based on the above-quoted arbitration provisions. In response, plaintiffs tendered affidavits stating, among other things, that they were "given no opportunity to read or study the enrollment form that BMC presented," were "given no opportunity to have an attorney review the enrollment form," "did not know and [were] not made aware that words on the back said students give away the right to conduct discovery," "did not know what the term discovery meant," "did not know, and [were] not made aware, that words on the back said students give away the right to combine their claims with each other against BMC in a class action," and "did not know and [were] not made aware that words on the back said students were being asked to give away the right to have a jury hear a dispute with BMC." *Id.* at 259, 265.

Original trial judge John R. Pera issued an order denying Brown Mackie's motion to compel arbitration. Judge Pera found that the "Plaintiffs allege that the school is not accredited, whereas the Agreement explicitly states otherwise. Indeed, Plaintiffs' claim addresses the actual contents of the document. Therefore, because grounds for the revocation of the Agreement—fraud and fraudulent inducement concerning misstatements of the content of the Agreement—exist, this Court cannot determine an existence of an enforceable agreement to arbitrate the dispute." *Id.* at 345.

Soon, however, the plaintiffs' cause was transferred to another court for consolidation with a similar pending action, and Brown Mackie's motion to compel arbitration was readdressed by Judge Gerald N. Svetanoff.

Judge Svetanoff granted Brown Mackie's motion to compel arbitration with respect to the plaintiffs. Judge Svetanoff agreed with Judge Pera's reasoning vis-à-vis the enrollment agreements alone, but he did not think Judge Pera's rationale extended to the separate arbitration forms. Judge Svetanoff concluded that "the alleged fraud, which may have affected the enforceability of the arbitration provisions contained in the Enrollment Agreement, does not affect the enforcement of the separate Arbitration Agreement that contained none of the representations alleged by the plaintiffs to have been false and fraudulent. Accordingly the separate Arbitration Agreements are enforceable as to all plaintiffs who executed them. . . ." *Id.* at 18.

The plaintiffs sought leave to file this interlocutory appeal. The trial court granted certification, and we accepted jurisdiction.

### Discussion and Decision

The plaintiffs claim that the trial court erred by granting Brown Mackie's motion to compel arbitration. Brown Mackie purports to "cross-appeal," attacking the rationale of the trial court's order.

### I. Standard of Review/Materials Reviewable on Appeal

■ This is an appeal from an order compelling arbitration, which we review *de*

*novo. State ex rel. Carter v. Philip Morris Tobacco Co.,* 879 N.E.2d 1212, 1214–15 (Ind.Ct.App.2008), *reh'g denied, trans. denied.*

A preliminary issue raised by the parties is how motions to compel arbitration are approached procedurally, and what materials are subject to our review. The plaintiffs offered affidavits in opposition to Brown Mackie's motion to compel arbitration. Brown Mackie maintains that a motion to compel arbitration is treated just like a motion to dismiss, and that in resolving this case, we are confined to the pleadings and written contractual instrument. *See* Ind. Trial Rules 9.2, 12.

Though often associated with motions to dismiss, motions to compel arbitration are distinct procedural mechanisms. *Cf. Tamko Roofing Prods., Inc. v. Dilloway,* 865 N.E.2d 1074, 1078 (Ind.Ct.App.2007) ("Due to the fact that Tamko's oral motion to dismiss was based upon its contention that arbitration was required before litigation, we view the motion more satisfactorily as a motion to compel arbitration."); *Roddie v. N. Am. Manufactured Homes, Inc.,* 851 N.E.2d 1281, 1284 (Ind.Ct.App.2006) ("Because NAMH's motion to dismiss was based upon its contention that arbitration was required before litigation, it was, in essence, a motion to compel arbitration."). As a point of comparison, the denial of a motion to compel arbitration is appealable as a matter of right, Ind.Code § 34–57–2–19(a)(1); *Int'l Creative Mgmt., Inc. v. D & R Entm't Co., Inc.,* 670 N.E.2d 1305, 1310 (Ind.Ct.App.1996), *reh'g denied, trans. denied,* whereas the denial of a motion to dismiss is not necessarily a final appealable order, *see* Ind. Appellate Rule 2(H); *Nw. Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339, 341 (Ind.Ct.App.1998).

■ Authorities hold that motions to compel arbitration are procedurally akin to motions for summary judgment. *See, e.g.,*

*Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir.2002); 4 Am.Jur.2d *Alternative Dispute Resolution* § 98 (2007); *see also* Ind. Trial Rule 56. As one jurisdiction explains, "A motion to compel arbitration is analogous to a motion for summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration. . . . After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *The Dunes of GP, L.L.C v. Bradford,* 966 So.2d 924, 926 (Ala.2007) (quotations and citations omitted).

■ We follow suit and conclude that, like parties opposing motions for summary judgment, parties opposing motions to compel arbitration may designate and rely on evidence beyond the pleadings and written contractual instruments. So for purposes of this case, the plaintiffs' affidavit testimony was and is appropriate for consideration.

## II. The Federal Arbitration Act

■ The Federal Arbitration Act provides, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006); *accord* Ind.Code § 34–57–2–1. Where a party seeks to compel arbitration pursuant to a written arbitration agreement, then "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accor-

dance with the terms of the agreement." 9 U.S.C. § 4; *accord* Ind.Code § 34–57–2– 3. The FAA applies to written arbitration provisions in contracts involving interstate commerce, 9 U.S.C. § 2, and creates a body of substantive law applicable in both federal and state courts, *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

Congress enacted the FAA to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner. *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262, 1271, 173 L.Ed.2d 206 (2009). The FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Like other contracts, however, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). State law contract principles apply to determine whether parties have agreed to arbitrate. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind.2004).

### III. The Parties' Arbitration Agreement

A party seeking to compel arbitration first must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that the parties agreed to arbitrate. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 284 (Ind.Ct.App.2004).

To satisfy its burden, Brown Mackie tendered the plaintiffs' enrollment materials, which provide in duplicate that "You and Brown Mackie College–MV agree that any dispute or claim between you and BMC ... arising out of or relating to this enrollment agreement ... whether such dispute arises before, during, or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be, at your or BMC['s] election, submitted to and resolved by individual binding arbitration." These arbitration clauses are in writing, are signed by the plaintiffs, and appear on their face to be enforceable provisions contemplating arbitration of the plaintiffs' present dispute.

### IV. The Plaintiffs' Defenses

The plaintiffs advance two primary defenses to avoid operation of the arbitration clauses.

#### A. Fraudulent Inducement

The plaintiffs' principal claim is one of "fraudulent inducement." The plaintiffs assert that they were "fraudulently induced to sign an enrollment agreement, which ... was represented to be for an accredited degree that Brown Mackie College knew it could not produce; therefore, a valid agreement does not exist between the parties." Appellants' Br. p. 6.

Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract. *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct.App.2002). "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Restatement (Second) of Contracts § 164(1) (1981). Fraudulent inducement does not prevent the formation of a contract altogether, but it does render the contract "voidable." *Id.* at cmt. a.

## B. Unconscionability

The plaintiffs have also set forth allegations that their enrollment agreements are "unconscionable." The plaintiffs claim that they were "given papers to sign upon registering with Brown Mackie to enroll in the Surgical Technology program but ... were not offered an opportunity to read the entire agreement nor invited to discuss its provisions." Appellants' Reply Br. p. 8–9.

■■■ A contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms. *Sanford v. Castleton Health Care Ctr., LLC,* 813 N.E.2d 411, 417 (Ind.Ct. App.2004), *reh'g denied, trans. dismissed.* "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." Restatement (Second) of Contracts § 208 (1981).

## V. Arbitrability of the Plaintiffs' Defenses

■■■ In general, challenges to the validity of arbitration agreements can be divided into two types: one type challenges specifically the validity of the agreement to arbitrate, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. *Rent–A–Center, West, Inc. v. Jackson,* — U.S. ——, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010).

■■■ If a party challenges the validity of the precise agreement to arbitrate, the court must address the challenge before ordering compliance with that agreement, *id.,* whereas "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

■■■ For example, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the [ ] court may proceed to adjudicate it. But the [FAA's] statutory language does not permit the [ ] court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *In Prima Paint,* buyer and seller contracted for the sale of a business. *Id.* at 397, 87 S.Ct. 1801. Their contract contained an arbitration clause providing, "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration...." *Id.* at 398, 87 S.Ct. 1801. According to buyer, seller fraudulently represented that it was solvent and able to perform its contractual obligations, when it was in fact insolvent and intended to file for bankruptcy shortly after execution of the agreement. *Id.* Buyer filed suit seeking rescission of the agreement on the basis of fraudulent inducement, *id.,* but advanced no specific claim that seller fraudulently induced it to enter into the agreement to arbitrate, *id.* at 407, 87 S.Ct. 1801. Seller moved to stay the action pending arbitration. *Id.* at 399, 87 S.Ct. 1801. The central issue in the case was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitra-

tors." *Id.* Interpreting Section 4 of the FAA, the United States Supreme Court held that courts may adjudicate claims that attack the making of arbitration agreements specifically. *Id.* at 403–04, 87 S.Ct. 1801. Claims alleging fraudulent inducement of entire contracts, however, are properly arbitrated. *Id.* at 404, 87 S.Ct. 1801. The Court affirmed dismissal of buyer's appeal. *Id.* at 407, 87 S.Ct. 1801.

■■■ The very same principles apply to claims of unconscionability. *See Rent–A–Center*, 130 S.Ct. at 2779–80. A party's allegation "that the [a]greement *as a whole* is unconscionable under state law" is a claim reserved for arbitrators and not the courts. *See id.* at 2781.

■■■ In line with the foregoing, we conclude that the plaintiffs' action remains subject to arbitration. The thrust of the plaintiffs' fraudulent inducement claim is that Brown Mackie "knowingly made false statements to students about accreditation, externships and job placement after graduation, thereby inducing students to enroll in defendant's Surgical Technology program." The plaintiffs allege a fraudulent inducement of their entire enrollment agreements—not of their arbitration clauses in particular. Under *Prima Paint,* the plaintiffs' dispute falls within the intended purview of their executed arbitration provisions and thus remains arbitrable.

The plaintiffs' affidavit testimony alleging unconscionability is further unavailing. The plaintiffs claim that they were "given no opportunity to read or study the enrollment form," were "given no opportunity to have an attorney review the enrollment form," "did not know and [were] not made aware that words on the back said students give away the right to conduct discovery," "did not know and [were] not made aware that words on the back said students were being asked to give away the right to have a jury hear a dispute

with BMC," etc. These assertions that the plaintiffs did not read or understand the contractual documents do not suffice to allege unconscionability of the arbitration clauses specifically, but rather address the formation of their contracts generally. *See, e.g., Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 431 (5th Cir.2004) (where party alleged unconscionability of arbitration clause, assertions that she did not read the documents because salesman did not ask her to read them, that no one told her she was signing an arbitration agreement, and that no one explained the term "arbitration" to her, constituted general attacks on contract and were insufficient to avoid arbitration); *cf. Rent–A–Center,* 130 S.Ct. at 2780 (in which plaintiff alleged that arbitration agreement was a procedurally unconscionable, non-negotiable condition of employment, and that fee-splitting arrangement and discovery limitations were substantively unconscionable conditions of arbitration).

## VI. *Hilligoss* and Fraud in the Execution

The plaintiffs cite *A.G. Edwards & Sons, Inc. v. Hilligoss,* 597 N.E.2d 1 (Ind.Ct. App.1991), in defense of their position. In *Hilligoss,* client invested money with broker on the advice of manager. *Id.* at 2. At some point client wished to withdraw funds from her account. *Id.* Manager told client that she could borrow from broker on margin and repay him. *Id.* Client agreed to borrow the funds in that manner. *Id.* Manager presented client with broker's "Customer's Agreement" form and represented that it was a loan document. *Id.* at 2, 3. Client did not read it but believed it was necessary "to follow through with getting the money." *Id.* at 2. The agreement contained a clause requiring arbitration of disputes arising while broker represented client. *Id.* After client executed the customer agreement, broker

and manager allegedly began trading client's money in speculative stocks and options, amassing sizable commissions and losses, all without client's consent. *Id.* Client closed her account and filed suit. *Id.* Broker moved to stay the proceedings pending arbitration, which motion the trial court denied. *Id.* The issue presented was whether "(a) manager's obtaining of client's signature on broker's customer's agreement constituted fraud, and (b) if so, did it void the contract?" *Id.* at 3. The trial court found that manager procured client's signature to the customer agreement "by representing it as a loan document, the signing of which was a formality for receipt of a loan. . . . In light of [manager's] understanding of all that the customer agreement provided for, to represent it as a loan document is a fraudulent misrepresentation that goes to the very nature of the document itself." *Id.* This Court found substantial evidence supporting the trial court's conclusion and affirmed. *Id.* We noted in part that "to knowingly misstate the contents of a writing and to purposely misstate facts which would cause the signing of the same is fraud." *Id.*

*Hilligoss* is perhaps best understood as a case involving "fraud in the execution" or "factum" rather than fraud in the inducement. That is, "[i]f a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent." Restatement (Second) of Contracts § 163 (1981). "The party may believe that he is not assenting to any contract or that he is assenting to a contract entirely different from the proposed contract." *Id.* at cmt.

a. "In such a case there is no effective manifestation of assent and no contract at all." *Id.* "This result only follows, however, if the misrepresentation relates to the very nature of the proposed contract itself and not merely to one of its nonessential terms." *Id.; see also Novotny v. Renewal by Andersen Corp.,* 861 N.E.2d 15, 21 n. 6 (Ind.Ct.App.2007) ("[I]n *Hilligoss,* the fraud went to the actual contents of the contract, and the facts regarding the contract, which included the arbitration clause, were misstated.").

When so understood, *Hilligoss* accords with the weight of authority finding fraud-in-the-execution claims non-arbitrable. *See, e.g., Cancanon v. Smith Barney Harris Upham & Co.,* 805 F.2d 998, 1000 (11th Cir.1986) ("[W]here the allegation is one of fraud in the factum, i.e., ineffective assent to the contract, the issue is not subject to resolution pursuant to an arbitration clause contained in the contract documents."); *Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1074 (1996) (where "a party's apparent assent to a written contract is *negated* by fraud in the inception, there is simply no arbitration agreement to be enforced"; parties cannot "have intended arbitration under a contract wholly void for fraud in its execution"); 21 Richard A. Lord, *Williston on Contracts* § 57:14 (4th ed. 2001) ("[T]he defense of fraud in the execution of a contract may be raised to defeat an attempt to arbitrate disputes involving the contract."); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters,* —— U.S. ——, 130 S.Ct. 2847, 2855–56, 177 L.Ed.2d 567 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Buckeye,* 546 U.S. at 444 n. 1, 126 S.Ct. 1204 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); *Goebel v.*

*Blocks & Marbles Brand Toys, Inc.,* 568 N.E.2d 552, 556–57 (Ind.Ct.App.1991) ("[A] question of whether an arbitration agreement ever was made . . . is a question for a court."), *reh'g denied;* 13D Charles Alan Wright et al., *Federal Practice and Procedure* § 3569 (3d ed. 2008) ("An argument attacking the very existence of any contract is to be determined by the court."). *But see R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992) (drawing no distinction between claims of fraud in the execution and claims of fraud in the inducement for purposes of arbitrability); *C.B.S. Emp. Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 912 F.2d 1563, 1567 (6th Cir.1990) (same).

Here, on the other hand, the plaintiffs have advanced no substantive allegations of fraud in the execution so as to show ineffective assent and failure to form an agreement. There was simply no clandestine substitution-of-terms or comparable shenanigans by Brown Mackie in this case. And contrary to Judge Pera's suggestion, the fact that Brown Mackie's alleged misrepresentation of accreditation appears on the enrollment agreement does not convert this case into one involving fraud in the execution of the contract. It actually does the opposite and supports the plaintiffs' fraudulent inducement claim—that is, the enrollment agreement's statement of accreditation is the very representation that the plaintiffs claim to have recognized, understood, and relied on when executing their contracts.

For these reasons, and on the grounds articulated *supra,* the plaintiffs' defenses sound exclusively in fraudulent inducement and unconscionability and are insufficient to circumvent the arbitration provisions in their enrollment materials.

## VII. Brown Mackie's "Cross–Appeal"

Judge Svetanoff found that without any supplemental arbitration forms, the plaintiffs' challenges to the enrollment agreements would have been non-arbitrable and appropriate for adjudication. He concluded, however, that the plaintiffs' execution of separate arbitration forms compelled arbitration. Brown Mackie purports to "cross-appeal" the rationale of Judge Svetanoff's order. Brown Mackie argues that "it makes no difference whether or not the Students signed a Separate Arbitration Agreement" and asks us to find "that the Enrollment Agreements, in addition to the Separate Arbitration Agreements, signed by all Students mandate that the Students' claims be submitted to arbitration." Appellee's Br. p. 28.

■■■■ "A party cannot appeal from a judgment favorable to him." *Clark v. Stout,* 105 N.E. 569, 569 (Ind.1914). One cannot appeal a judgment in his favor unless he is in some manner aggrieved thereby. *Nehi Beverage Co., Inc. of Indianapolis v. Petri,* 537 N.E.2d 78, 82 (Ind.Ct.App. 1989), *trans. denied; Given v. United States,* 126 Ind.App. 425, 427, 133 N.E.2d 577, 578 (1956); *see also California v. Rooney,* 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) ("This Court reviews judgments, not statements in opinions. . . . Here, the judgment of the Court of Appeal was entirely in the State's favor The fact that the Court of Appeal reached its decision through analysis different than this Court might have used does not make it appropriate . . . for the prevailing party to request us to review it. . . . The Court of Appeal's use of analysis that may have been adverse to the State's long-term interests does not allow the State to claim status as a losing party for purposes of this Court's review." (quotations and citations omitted)).

■■■■ Judge Svetanoff's order granted Brown Mackie's request for arbitration with respect to the plaintiffs subject to this

appeal. The judgment was entirely in Brown Mackie's favor as it pertained to the plaintiffs before us. Brown Mackie thus cannot cross-appeal the order only to assail the trial court's reasoning. Presumably, Brown Mackie desires to broaden Judge Svetanoff's ruling so that it compels arbitration of claims belonging to other student plaintiffs who may not have executed separate arbitration forms. Those other student plaintiffs are not parties to this appeal and were not made parties to Brown Mackie's supposed cross-appeal. Brown Mackie even admits that "this Court should consider the order appealed from as it pertains to the Brumley Students only." Appellee's Br. p. 4 n. 4. So to the extent Brown Mackie requests that we prune Judge Svetanoff's order to the detriment of non-parties, we necessarily decline.

The order of the trial court compelling arbitration is affirmed.

Affirmed.

BAKER, J., concurs.

BARNES, J., concurs with separate opinion.

BARNES, Judge, concurring.

I concur in full with the majority opinion. I do so because it is clear to me that United States Supreme Court precedent, such as *Prima Paint* and *Rent–A–Center*, compels this outcome. I have no argument with arbitration provisions per se. Parties often include them in contracts, and by law they are free to do so.

I recognize that the students' allegations here are, at this point, unproven. Still, if true, it is plainly evident that Brown Mackie at best was disingenuous in its advertising, and at worst was actively dishonest in touting the surgical technology degree it offered. Although Brown Mackie trumpeted being "accredited" in its advertising and materials, that "accreditation" allegedly was insufficient to allow graduates to take the required exam for surgical technology certification. Indiana residents likely were hornswoggled here, and I am frustrated that we are powerless to intervene. I must trust that an arbitrator will fairly consider the students' claims.

I concur fully, but grudgingly.