## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Dec 12 2016, 7:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Ronald A. Wright
Marsha L. Hackenberg
Wright & Associates, PC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Thomas M. Connor
Dinsmore & Shohl LLP
Cincinnati, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

Afsaneh S. Kleinman and Dr. Elliot Kleinman,

*Appellants-Plaintiffs,*

v.

Fifth Third Securities, Inc.,

*Appellee-Defendant.*

December 12, 2016

Court of Appeals Case No. 49A02-1603-CC-624

Appeal from the Marion Superior Court

The Honorable John F. Hanley, Judge

Trial Court Cause No. 49D11-1412-CC-41876

**Vaidik, Chief Judge.**

# Case Summary

[1] Afsaneh and Elliot Kleinman sued Fifth Third Securities, Inc., alleging that they had received bad investment advice. Fifth Third Securities responded with a motion to dismiss the case and to compel arbitration, claiming that the Kleinmans had agreed that any disputes would be arbitrated. The trial court granted the motion, and the Kleinmans appeal. Finding no error, we affirm.

# Facts and Procedural History

[2] On December 17, 2012, the Kleinmans deposited $500,000 into an account with Fifth Third Securities. Appellants' App. p. 47. On December 19, Afsaneh met with Gregory Lutterman, a financial advisor with Fifth Third Securities, to discuss how to invest the money. Lutterman recommended that the Kleinmans put the funds into Unit Investment Trusts ("UITs"). He also gave Afsaneh a Brokerage Account Application ("Account Application") form and a UIT Explanation of Investments form to discuss with Elliot. The parties dispute whether the Kleinmans agreed to the UIT investments on December 19, but two days later, Fifth Third Securities used the $500,000 to purchase units in four UITs, and it sent the Kleinmans a notice confirming the transactions. Six weeks later, in February 2013, the Kleinmans met with Lutterman and signed an Account Application and a UIT Explanation of Investments relating to the investments.

In December 2014, the Kleinmans filed suit against Fifth Third Securities. They did not provide us with a copy of their complaint, but they apparently alleged that Lutterman had given them bad investment advice and that they had lost money as a result. In response, Fifth Third Securities filed a motion to have the case dismissed and to compel arbitration on the ground that the Kleinmans had agreed that any dispute would be resolved via arbitration. It relied on two documents: the Account Application that the Kleinmans had signed and a document called Brokerage Account Customer Agreement ("Customer Agreement"). The Account Application included the following provision, in a box and bold letters just above the parties' initials and signatures:

**Pre-Dispute Arbitration**

**This account is governed by a pre-dispute arbitration clause, which appears on the last page of the Client Agreement, and you acknowledge that you have received a copy of this clause.**

*Id*. at 19. The last page of the Customer Agreement began with the heading "Resolving Disputes – Arbitration" and provided, in part:

This agreement contains a pre-dispute arbitration clause. Under this clause, which becomes binding on all parties when you sign your account application, you, we, and NFS [National Financial Services LLC] agree as follows:

[introductory provisions omitted]

All controversies that may arise between me, You and NFS concerning any subject matter, issue or circumstances whatsoever (including, but not limited to, controversies concerning any

account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me, You and NFS whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as I may designate.

*Id*. at 25.

[4] While the motion to dismiss was pending, the Kleinmans deposed Lutterman. Lutterman testified that while he could not specifically recall giving the Kleinmans a copy of the Customer Agreement along with the Account Application, it was "standard practice" to do so. Lutterman Depo. p. 14, 25 (included in Volume of Exhibits). The next month, the Kleinmans moved to publish the deposition. On November 13, 2015, the trial court granted that motion and also issued an order granting Fifth Third Securities' motion to dismiss and to compel arbitration.

[5] The Kleinmans now appeal.

# Discussion and Decision

[6] The Kleinmans contend that the trial court erred by granting Fifth Third Securities' motion to dismiss and to compel arbitration. We review such matters de novo. *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 774-75 (Ind. Ct. App. 2011).

As the party seeking to compel arbitration, Fifth Third Securities had the burden of showing that the parties entered into an arbitration agreement and that the dispute at issue is covered by the agreement. *Id.* at 775-76. The Kleinmans maintain that Fifth Third Securities failed to make these two showings. We disagree.[1]

## I. Existence of Arbitration Agreement

The parties entered into an arbitration agreement. The Kleinmans signed the Account Application, and by doing so they acknowledged that (1) their account would be "governed by a pre-dispute arbitration clause" and (2) they "have received a copy of this clause." Fifth Third Securities' arbitration clause appears on the last page of its Customer Agreement, and the Kleinmans' acknowledgement that they received a copy of the clause is corroborated by Lutterman's deposition testimony that it was "standard practice" to provide a copy of the Customer Agreement along with the Account Application.

The Kleinmans make much of the fact that the arbitration acknowledgement in the Account Application references a "Client Agreement," whereas the document relied upon by Fifth Third Securities is called "Customer Agreement." They note the lack of evidence that a document called "Client Agreement" even exists. But if the Kleinmans were concerned about the

---

[1] Fifth Third Securities correctly notes that "Indiana recognizes a strong policy favoring the enforcement of arbitration agreements." *Koors v. Steffen*, 916 N.E.2d 212, 215 (Ind. Ct. App. 2009), *reh'g denied*. This appeal, however, primarily concerns whether an agreement to arbitrate the dispute at issue even **exists**.

absence of a document called "Client Agreement," the time to raise that concern was before signing the Account Application. Had they done so, Fifth Third Securities no doubt would have realized its imprecise drafting and explained that the relevant document is called "Customer Agreement." Instead, the Kleinmans simply signed the Account Application, thereby acknowledging their receipt of the arbitration clause. That acknowledgement—regardless of the precise name of the document in which the arbitration clause appears—is the key fact for our purposes. This fact strongly suggests that the Kleinmans understood "Client Agreement" to be a reference to the "Customer Agreement" in which the arbitration clause actually appears. The only other possibility is that the Kleinmans signed the Account Application without reading it. If that is the case, they did so at their own peril. *See Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997) ("Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it.").

[10] In support of their argument that they did not agree to arbitration, the Kleinmans cite *Webb v. First Tennessee Brokerage, Inc.*, No. E2012-00934-COA-R3-CV, 2013 WL 3941782 (Tenn. Ct. App. June 18, 2013), in which the Tennessee Court of Appeals affirmed a trial court's denial of a motion to compel arbitration. In that decision, the court addressed the law of Tennessee, not Indiana. Furthermore, the publication status and precedential value of the decision are unclear—the court apparently did not designate it for publication in the Southwestern Reporter. In any event, the trial court decision that was

affirmed in that case turned in part on the fact that nowhere in the documents at issue did the customer "expressly say that she agrees to arbitrate." 2013 WL 3941782 at *12. Here, on the other hand, the first line of the arbitration clause states, "This agreement contains a pre-dispute arbitration clause. Under this clause, which becomes binding on all parties when you sign your account application, **you, we, and NFS agree as follows** . . . ." Appellants' App. p. 25 (emphasis added). This fact distinguishes this case from *Webb*.

## II. Scope of Arbitration Agreement

The Kleinmans also assert that even if an arbitration agreement exists, it does not cover the dispute at issue. They base this argument on the fact that they did not sign the Account Application until February 2013, six weeks after Fifth Third Securities put their money into the UITs. The Kleinmans contend that the agreement "was not in place at the time the investment was made, therefore it does not apply to the actions taken by the bank in December 2012." Appellants' Br. p. 18. We cannot say that this delay rendered the arbitration clause inapplicable to the parties' dispute. The clause is written very broadly to cover "[a]ll controversies . . . concerning any subject matter, issue or circumstances," including "controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between me, You and NFS **whether entered into or arising before, on or after the date this account is opened**[.]" Appellants' App. p. 25 (emphasis added).

In a final attempt to avoid the arbitration clause, the Kleinmans suggest that because they did not sign the Account Application until after Fifth Third Securities had completed the UIT transactions, Fifth Third Securities' actions were taken "without authorization" and were "illegal" and therefore fall outside the scope of the arbitration agreement. Appellants' Br. p. 19. They do not support this argument with cogent reasoning, so it is waived. *See* Ind. Appellate Rule 46(A)(8)(a); *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 795 (Ind. 2013). Waiver notwithstanding, the Kleinmans' claim that the transactions were not authorized is belied by the fact that when Fifth Third Securities sent them a notice confirming the transactions, they did not question the transactions or seek to have them reversed. Instead, the Kleinmans waited six weeks and then signed the Account Application, thereby ratifying the earlier investments. In short, the time for claiming that Fifth Third Securities' initial actions were "illegal" has long passed.

Affirmed.

Baker, J., and Najam, J., concur.