## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 25 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrew W. Hull
Michael R. Limrick
Evan D. Carr
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

A. Richard M. Blaiklock
Charles R. Whybrew
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Whitesell Precision Components, Inc., *Appellant-Defendant,* <br><br> v. <br><br> Autoform Tool & Manufacturing, LLC, *Appellee-Plaintiff* | June 25, 2019 <br><br> Court of Appeals Case No. 18A-PL-2462 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather Welch, Judge <br><br> Trial Court Cause No. 49D01-1610-PL-36015 |

**Crone, Judge.**

## Case Summary

[1] Whitesell Precision Components, Inc. ("Whitesell"), brings this interlocutory appeal from the trial court's denial of its motion to compel arbitration of a dispute between Whitesell and Autoform Tool & Manufacturing, LLC ("Autoform"). The sole issue presented for our review is whether the trial court erred when it denied Whitesell's motion to compel arbitration. Finding no error, we affirm.

## Facts and Procedural History

[2] Whitesell is in the business of manufacturing and distributing engineered, specialty, and standard components and parts used in various industries, including in the assembly and manufacture of automobiles. Autoform is an auto parts supplier that produces fuel rail assemblies that are used in six-cylinder General Motors vehicles. Autoform sells its fuel rail assemblies to Hitachi Automotive Systems, Americas, Inc. ("Hitachi"). There are two fuel rail assemblies in each vehicle, with three injector cups per assembly. Hitachi provides Autoform the design specifications for the injector cups to be used in its fuel rail assemblies.

[3] In October 2013, Hitachi instructed Autoform to contact Whitesell to source injector cups for use in the fuel rail assemblies. On October 24, 2013, Autoform contacted Whitesell via email and made a "Request for Quotation" ("RFQ") for the manufacture of the injector cups over the course of a five-model-year production run. Appellant's App. Vol. 3. at 22. Whitesell responded to the

RFQ with a document entitled "Customer Quotation" ("CQ1") that included a price per injector cup, minimum fabrication quantity, and shipping and payment terms. *Id*. at 25. CQ1 stated, "This Quotation Incorporates and is subject to the General Terms and Conditions of Seller as printed on the reverse side or next page …." *Id*. The next page of CQ1 set forth the following relevant general terms and conditions:

> 1. OFFER AND ACCEPTANCE: These terms and conditions govern all sales of product and services to Buyer. Buyer has read, understands, accepts, and agrees to these terms and conditions. Seller rejects, and objects to, all terms and conditions of Buyer, and hereby notifies Buyer that Seller considers any term or condition of Buyer an unacceptable material alteration of these terms and conditions. If Buyer does not accept these terms and conditions, Buyer will notify Seller by promptly returning any shipments, and failure to do so shall constitute Buyer's unconditional acceptance of these terms and conditions …. Buyer shall not submit additional or different terms and conditions, and any such additional or different terms and conditions of Buyer shall be deemed objectionable to Seller without further notice from Seller and shall not form a part of any contract between the parties…. To the extent these terms and conditions are determined to constitute an acceptance of any offer of Buyer, such acceptance is expressly conditioned upon Buyer's assent to all of these terms and conditions only.
>
> ….
>
> 19. GOVERNING LAW; JURISDICTION: This contract is governed by the laws of ALABAMA, excluding the provision of the United Nations Convention on Contracts for the International Sale of Goods and any conflict of law provisions that would require application of another choice of law…. *If requested by Seller following the assertion of any claim related to quality*

*of any product or any warranty, such claim shall be submitted to binding arbitration before three arbitrators*…. Such arbitration shall occur in Birmingham, Alabama and be limited to such quality or warranty claim.

….

21. ENTIRE AGREEMENT: …. No terms or conditions other than those stated above and no engagement or understanding, oral or written, in any way purporting to modify these terms and conditions shall be binding on Seller unless hereafter made in writing and physically signed by its authorized representative.

*Id*. at 26 (emphasis added).

[4] On November 6, 2013, Autoform sent an email to Whitesell containing a purchase order. The purchase order called for the delivery of 300 injector cups as a sample for the "PPAP" (product part approval process), followed by delivery of 8700 injector cups after PPAP approval. *Id*. at 28-31. The PPAP purchase order also included design specifications and delivery terms.

[5] In late January 2014, Hitachi asked Autoform to provide new pricing to account for a lower volume of fuel rail assembly purchases than previously anticipated. Accordingly, Autoform submitted a second RFQ to Whitesell based on Hitachi's request for information regarding a lower volume order of injector cups. In February 2014, Whitesell provided Autoform a second quote ("CQ2") taking into account the lower volume and listing a higher price per injector cup.

[6]     On November 17, 2014, Autoform issued its first production purchase order to Whitesell listing the original CQ1 lower price per injector cup. Thereafter, Autoform issued additional production purchase orders to Whitesell also containing the lower price. From at least January 2015 through May 2016, Whitesell shipped injector cups to Autoform with invoices reflecting the CQ1 original lower quoted price per cup.

[7]     On October 16, 2015, Whitesell's quality manager signed a document emailed to him by Autoform called the "Supplier Quality Guidelines" ("SQG"). The SQG stated, in relevant part, "By signing this document, the supplier has reviewed [Autoform's] Quality Guideline and has accepted [Autoform's] Terms and Conditions." Appellant's App. Vol. 2 at 193. It was not until late July 2016 that Whitesell sent Autoform an invoice which reflected the higher CQ2 per-cup price. Subsequent invoices also reflected the higher price. Autoform, however, continued to send purchase orders listing the CQ1 lower price.

[8]     This pricing dispute prompted Whitesell to file a complaint for breach of contract and declaratory judgment against Autoform on October 11, 2016. On the same date, Autoform filed a complaint for breach of contract against Whitesell. The cases were consolidated and transferred by agreement to the Marion County Commercial Court. Thereafter, the parties engaged in preliminary settlement negotiations that ultimately failed. In December 2016, Autoform filed an emergency motion for a temporary restraining order ("TRO") after Whitesell stated that it would stop shipping injector cups to Autoform until Autoform made back payments based on the higher pricing and

agreed to pay the higher price going forward. Following a hearing on the TRO motion, the trial court granted a TRO requiring Whitesell to continue shipping the injector cups to Autoform during the pendency of the lawsuit. After several continuances, the parties agreed to be bound by a preliminary injunction until the trial court could enter a judgment at a bench trial on the merits.

[9] On October 3, 2017, Autoform filed an emergency motion for contempt alleging that Whitesell threatened to stop shipping the injector cups. During a hearing on that motion, the trial court learned for the first time that Autoform believed it was receiving defective injector cups from Whitesell that were causing problems with the fuel rail assemblies, and that Hitachi had begun assessing costs against Autoform related to the allegedly defective fuel rail assemblies. In turn, Autoform had reduced its payments to Whitesell on the belief that the alleged defects in the fuel rail assemblies were being caused by quality issues with the injector cups from Whitesell. The parties informed the trial court that they had communicated about correcting the quality issues, but they disagreed as to the corrective process. Following the hearing, the trial court issued a preliminary order based on what the parties agreed was an acceptable temporary resolution.

[10] The trial court held a subsequent hearing to consider Autoform's motion for contempt regarding the quality issues, but the court was unable to conclude the hearing and continued it. Two days before the continued hearing was scheduled to begin, Whitesell's counsel withdrew their appearances and new counsel entered appearances and requested a continuance on the contempt

matter, which the trial court granted. Thereafter, Whitesell filed a motion to terminate the contempt proceedings. The trial court held a hearing and determined that in order to resolve the quality disputes regarding the injector cups, the trial court "would need to determine which part[ies' terms and conditions] govern the parties' agreement." Appealed Order at 12.

[11] In January 2018, Whitesell filed five motions, including a motion for partial summary judgment requesting a determination, as a matter of law, that its terms and conditions contained in CQ1 ("Whitesell's T&Cs") govern the parties' contractual relationship, as well as a motion to compel arbitration of Autoform's quality-related counterclaims. Whitesell's motion to compel arbitration presupposed the granting of its motion for partial summary judgment.

[12] In February 2018, Autoform filed a cross-motion for summary judgment arguing that its "Terms and Conditions of Purchase" which incorporated its SQG ("Autoform's T&Cs"), govern the parties' contractual relationship.[1] Appellant's App. Vol. 4 at 3. On May 2, 2018, the trial court stayed ruling on any motions pending a determination of which parties' terms and conditions govern the parties' relationship. "If Whitesell's Terms and Conditions

---

[1] Also in February 2018, Whitesell filed a motion to dissolve the preliminary injunction compelling Whitesell to continue supplying injector cups to Autoform. The trial court entered an order denying the motion and requiring Whitesell to continue shipping injector cups to Autoform. Whitesell sought an interlocutory appeal, and another panel of this Court affirmed the trial court in a published opinion. *Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC*, 110 N.E.3d 380, 381-83 (Ind. Ct. App. 2018), *trans. denied* (2019).

governed, the Court reasoned, then the issue of the injector cup part quality would be bifurcated from the present case and submitted for arbitration." Appealed Order at 13.

[13] On August 9, 2018, the trial court held an evidentiary hearing on the cross-motions for summary judgment as well as on Whitesell's motion to compel arbitration. Thereafter, the trial court entered a consolidated order denying both parties' motions for partial summary judgment and Whitesell's motion to compel arbitration. Specifically, regarding the summary judgment motions, the trial court determined that issues of fact and ambiguities remain on which terms and conditions govern the parties' relationship, making summary judgment in favor of either party inappropriate. Regarding the motion to compel arbitration, the court determined that because the arbitration provision is contained in, and presupposes application of, Whitesell's T&Cs, and because the court could not determine that those terms and conditions govern as a matter of law, denial of Whitesell's motion to compel arbitration was warranted. This interlocutory appeal ensued. For reasons explained more fully below, this appeal solely involves the trial court's denial of Whitesell's motion to compel arbitration.

## Discussion and Decision

[14] We begin by noting that an order denying an application to compel arbitration is appealable as a matter of statutory right. Ind. Code § 34-57-2-19(a)(1); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 776 (Ind. Ct. App. 2011); *see* Ind. Appellate Rule 14(D) (permitting interlocutory appeals as

provided by statute). Indiana has long recognized a strong policy favoring the enforcement of arbitration agreements. *Destination Yachts, Inc. v. Pierce*, 113 N.E.3d 645, 653 (Ind. Ct. App. 2018), *trans. denied* (2019). Indiana Code Section 34-57-2-3(a) provides in relevant part:

> On application of a party showing an agreement described in section 1[2] of this chapter, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. Ten (10) days notice in writing of the hearing of such application shall be served personally upon the party in default. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue raised without further pleading and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Accordingly, once a trial court is satisfied that the parties indeed contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration. *Destination Yachts*, 113 N.E.3d at 653.

[15] Motions to compel arbitration are procedurally akin to motions for summary judgment. *Brumley*, 945 N.E.2d at 776. "The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration[.]" *Id*. (citation omitted). After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence

---

[2] Section 1 provides that "[a] written agreement to submit to arbitration is valid, and enforceable, an existing controversy or a controversy thereafter arising is valid and enforceable, except upon such grounds as exist at law or in equity for the revocation of any contract."

that the supposed arbitration agreement is not valid or does not apply to the dispute in question." "State law contract principles apply to determine whether parties have agreed to arbitrate." *Id.* (citing *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004)).

[16] Whitesell asserts that Autoform's quality-related claims must be ordered to mandatory arbitration pursuant to Whitesell's T&Cs, and therefore the trial court erred in denying the motion to compel arbitration of those claims. However, Whitesell's motion to compel arbitration presupposes a threshold determination by the trial court, as a matter of law, that Whitesell's T&Cs, and not Autoform's T&Cs, govern the parties' relationship. Indeed, Whitesell specifically concedes this point in its motion to compel. *See* Appellant's App. Vol. 3 at 109-10 ("*If the Court agrees* that Whitesell's General Terms and Conditions apply, then Paragraph 19 of those terms provides that 'the assertion of any claim related to the quality of any product … shall be submitted to binding arbitration.… *Once the Court determines* which party's terms and conditions apply to their relationship, and *upon a determination* that Whitesell's General Terms and Conditions apply, Autoform's quality claims should be ordered to mandatory arbitration.") (emphases added). In denying both Whitesell's and Autoform's motions for summary judgment on this issue, the trial court specifically concluded that genuine issues of material fact remain as to which party's terms and conditions govern the parties' relationship. Being unable to determine as a matter of law the threshold issue of which terms and conditions apply, the trial court could not be satisfied that the parties indeed

contracted to submit any quality-related disputes to arbitration. In other words, without more, an order compelling arbitration would be premature. Accordingly, the trial court denied Whitesell's motion.

[17] In this appeal, Whitesell basically requests a de novo determination by this Court that, as a matter of law, Whitesell's T&Cs govern the parties' relationship and hence the arbitration provision contained therein applies. In response, Autoform cross-appeals, also requesting a de novo determination that, as a matter of law, Autoform's T&Cs govern the parties' relationship and hence the arbitration provision does not apply. We reject both parties' attempts to sidestep the trial court's denial of their respective motions for partial summary judgment on this precise issue by way of an appeal and cross-appeal of the denial of the motion to compel arbitration. If either party wished to challenge the trial court's determination that genuine issues of material fact remain as to which terms and conditions apply, it could have sought certification from the trial court and pursued a discretionary interlocutory appeal of the ruling on the summary judgment motions pursuant to Indiana Appellate Rule 14(B).[3]

---

[3] It is well settled that an order denying a motion for summary judgment is not a final appealable order, and therefore a party seeking appellate review of a denial must do so by way of requesting certification of an interlocutory appeal from the trial court, as well as seeking acceptance of jurisdiction by this Court, in accordance with Indiana Appellate Rule 14. *Anonymous Doctor A. v. Sherrard*, 783 N.E.2d 296, 299 (Ind. Ct. App. 2003). No such request was made here.

Neither party did so. Consequently, we will accept the trial court's unchallenged determination as correct.[4]

[18] In sum, genuine issues of material fact remain on the threshold issue of which party's terms and conditions apply to the parties' relationship, and therefore we agree with the trial court that Whitesell has not, at this procedural juncture, met its burden of proving the existence of an enforceable contract between the parties calling for arbitration.[5] Accordingly, we affirm the trial court's denial of Whitesell's motion to compel arbitration.

[19] Affirmed.

Bradford, J., and Tavitas, J., concur.

---

[4] In a motion to dismiss and strike cross-appeal, which we deny as moot by separate order issued contemporaneously with this decision, Whitesell accuses Autoform of improperly trying to cross-appeal the trial court's uncertified interlocutory order denying its summary judgment motion. However, as explained above, we perceive Whitesell's appellate arguments, although framed under the guise of an appeal from the motion to compel arbitration, to in large part also be an attempt to appeal the uncertified interlocutory order denying its summary judgment motion. Clearly, Autoform's cross-appeal is simply a response to Whitesell's arguments. Stated another way, both parties are doing the same thing, and we reject both of their attempts to make an end run around the trial court's summary judgment rulings.

[5] Obviously, Whitesell may renew its arbitration motion upon resolution of the foregoing contract issues.